FILED

2021 May-05  PM 12:06
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

KATRINA CARTER         )

                                )

        Plaintiff,          )

                                )

v.                           )     **Civil Action No.: 1:20-CV-01803-CLM**

                                )

CROWN ASSET         )

MANAGEMENT, LLC;     )

                                )

        Defendants.       )

## DEFENDANT CROWN ASSET MANAGEMENT, LCC'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ...........................................................................ii

I.    STATEMENT OF UNDISPUTED FACTS.......................................................1

II.   SUMMARY JUDGMENT STANDARD REVIEW ......................................8

III.  LEGAL ARGUMENT...................................................................9

   A. Carter's FDCPA claims based upon the collection lawsuit fail because filing a lawsuit is not a deceptive or unfair means of collecting a debt, and Crown filed the lawsuit in good faith...........................................................9

      1. The FDCPA did not abolish a debt buyer's judicial remedies, including the good faith filing of a collection lawsuit......................9

      2. Even if a good faith lawsuit could form the basis of a FDCPA claim, the collection lawsuits at issue would not violate any of the FDCPA provisions upon which Carter's claims are based..........................15

         i.   Carter's § 1692d claim fails because the filing of a lawsuit does not constitute abuse or harassment of a debtor.............16

         ii.  Carter's claim under § 1692e fails because there was nothing deceptive or misleading in Crown Asset's underlying collection complaints.........................................................18

         iii. Carter's claims under § 1692f fails because Plaintiff fails to state claim upon which relief can be granted.......................19

IV.   CONCLUSION.........................................................................21

CERTIFICATE OF SERVICE................................................................22

# I.   <u>DEFENDANT'S STATEMENT OF UNDISPUTED FACTS</u>

1.     On August 14, 2018, Crown Asset Management, LLC purchased a portfolio of charged-off accounts from Synchrony Bank, including two accounts owed by Katrina Carter. The first of those accounts was an Old Navy Visa account, account number ending with 4049, for $2,438.56. The second was a JCP Credit Card Account, account number ending in 5750, for the amount of $2,318.77. (Doc. 20-4, Page 2 of 2). (Doc. 20-2, Page 2 of 5, ¶ 4; Page 3 of 5, ¶ 5-9).

2.     Along with other account information, Synchrony Bank provided a Bill of Sale in connection with Crown Asset's purchase of the charged-off accounts. As reflected in the Bill of Sale, Synchrony Bank transferred specific account information about the purchased accounts via an electronic file.  The files were loaded into Crown Asset's systems, and the specific information regarding Carter's accounts are shown in the Field Data Sheets. (Doc.20-4, Page 2 of 2). (Doc. 20-5, Pages 2-4). (Doc. 20-9, Pages 2-4).

## Carter's Old Navy Account

3.     Carter's Old Navy Visa was charged off on January 28, 2019 and eventually sold to Crown Asset. (Doc. 20-2, Page 2 of 5, ¶ 4).

4.     Crown Asset attempted to resolve the account with the Plaintiff before referring the account to counsel. During this process, Plaintiff never disputed

liability for the debt, nor did she request validation of the debt as allowed by the FDCPA. (Doc. 20-2, Page 3 of 5, ¶ 10).

5.     On December 13, 2019, Crown Asset placed the Old Navy account with Rausch, Sturm, Israel, Enerson & Hornick, LLP ("Rausch Sturm") and provided the law firm with account documentation. (Doc. 20-2, Page 3 of 5, ¶ 11; Page 4 of 5, ¶ 14). (Doc. 20-1, Page 2 of 5, ¶ 3).

6.     Crown Asset required Rausch Sturm to collect all accounts in accordance with any applicable Federal and State Laws. Rausch Sturm is required to know the law in each particular venue where suit may be filed. Rausch Sturm is required to know local procedural rules and local evidentiary rules in evaluating whether to file suit. (Doc. 20-2, Page 3 of 5, ¶ 12).

7.     Crown Asset provided Rausch Sturm approximately forty-one pages of billing records from Carter's specific account showing her use of the credit card and the charge-off date and amount. Crown Asset also provided evidence of its ownership of the account and an affidavit in support of Motion for Summary Judgment to be used at Rausch Sturm's discretion. These records were provided to Rausch Sturm before any lawsuit was filed. (Doc. 20-2, Page 4 of 5, ¶ 14).

8.     Rausch Sturm attempted to collect the Old Navy debt from Carter. On January 13, 2020 Rausch Sturm sent a letter to a debt relief agency representing Carter, and informed her (via her agent) of the right to dispute the debt under the

FDCPA. Carter did not dispute the debt. (Doc. 20-6, Page 3 of 3, ¶ 3). (Doc. 20-1, Page 2 of 5, ¶ 5-6).

9.      After exhausting other collection efforts, Rausch Sturm determined there existed a sufficient evidentiary basis to file suit on Carter's unpaid Old Navy account. (Doc. 20-1, Page 3 of 5, ¶ 18).

10.     On behalf of Crown Asset, Rausch Sturm filed the underlying collection action against Carter in the Small Claims Court of Talladega County, Alabama, on March 5, 2020. The complaint identified the debt at issue as Carter's Old Navy account and sought to recover the charge-off balance of $2,438.56. (Doc. 20-1, Page 3 of 5, ¶ 19). (Doc. 20-7, Pages 2-3).

11.     An exhibit was attached to the Complaint of a Charge Off Document sent to Katrina Carter identifying her name, address, account number, and amount owed.  The exhibit reflected the same account number and exact amount owed referenced in the Complaint. (Doc. 20-3, Page 2 of 4, ¶ 4).

12.     On August 11, 2020, Crown Asset's collection lawsuit proceeded to trial in the Small Claims Court. Attorney Darren Kies attended the collection trial on behalf of Crown Asset. Mr. Kies is a licensed attorney in good standing with the Alabama State Bar. (Doc. 20-3, Page 2 of 4, ¶ 1-2). (Doc. 20-8, Page 2 of 2).

13.     In Mr. Kies's professional judgment, the averments in the complaint and exhibits, if accepted by the judge, were sufficient to prove the case against Ms.

Carter. He was confident the documentation before the court would be adequate to grant judgment in Crown Asset's favor. (Doc. 20-3, Page 2 of 4, ¶ 6).

14.     Mr. Kies was prepared to cross-examine Katrina Carter, but she did not attend the trial. At trial, Mr. Kies presented to the Court the facts and evidence in favor of Crown Asset. Following the trial, the Court took the matter under advisement. On August 18, 2020, the Small Claims Court entered a verdict in favor of Katrina Carter. (Doc. 20-3, Page 3 of 4, ¶ 7, 9). (Doc. 20-8, Page 2 of 2).

### Carter's JCP Account

15.     Carter's JCP Credit Card Account was charged off on January 30, 2019 and eventually sold to Crown Asset. (Doc. 20-2, Page 3 of 5, ¶ 7).

16.     Crown Asset attempted to resolve the account with the Plaintiff before referring the account to counsel. During this process, Plaintiff never disputed liability for the debt, nor did she request validation of the debt as allowed by the FDCPA. (Doc. 20-2, Page 3 of 5, ¶ 10).

17.     On December 13, 2019, Crown Asset placed the JCP account with Rausch, Sturm, Israel, Enerson & Hornick, LLP ("Rausch Sturm") and provided the law firm with account documentation. (Doc. 20-2, Page 3 of 5, ¶ 11; Page 4 of 5, ¶ 15). (Doc. 20-1, Page 3 of 5, ¶ 23).

18.     In regard to the JCP account, Crown Asset provided Rausch Sturm approximately fifty-one pages of billing records showing Katrina Carter's use of the

credit card and the charge-off date and amount. Rausch Sturm also provided evidence of its ownership of the account and an affidavit in support of Motion for Summary Judgment to be used at Rausch Sturm's discretion. These records were provided to Rausch Sturm before any lawsuit was filed. (Doc. 20-2, Page 4 of 5, ¶ 15).

19.    Rausch Sturm attempted to collect the debt from Carter. On February 11, 2020 Rausch Sturm sent a letter to Carter's debt relief agent attempting to collect the debt and informing Carter of her right to dispute the debt under the FDCPA. Carter did not dispute the debt. (Doc. 20-10, Page 3 of 3, ¶ 3). (Doc. 20-1, Page 3 of 5, ¶ 25).

20.    After exhausting other collection efforts, Rausch Sturm determined a sufficient evidentiary basis existed to file suit on Carter's unpaid JCP account. (Doc. 20-1, Page 4 of 5, ¶ 39).

21.    On behalf of Crown Asset, Rausch Sturm filed the underlying collection action against Carter in the Small Claims Court of Talladega County, Alabama, on March 25, 2020. The complaint identified the debt at issue as Carter's JCP account and sought to recover the charge-off balance of $2,318.77. (Doc. 20-1, Page 4 of 5, ¶ 40). (Doc. 20-11, Pages 2-3).

22.    An exhibit was attached to the Complaint of a Charge Off Document sent to Katrina Carter identifying her name, address, account number, and amount

owed.  The exhibit reflected the same account number and exact amount owed referenced in the Complaint. (Doc. 20-3, Page 3 of 4, ¶ 12).

23.    On September 8, 2020, Crown Asset's collection lawsuit proceeded to trial in the Small Claims Court. Attorney Darren Kies attended the collection trial on behalf of Crown Asset. (Doc. 20-3, Page 3 of 4, ¶ 10, 16). (Doc. 20-12, Page 2 of 2).

24.    In Mr. Kies's professional judgment, the averments in the complaint and exhibits, if accepted by the judge, were sufficient to prove the case against Ms. Carter. He was confident the documentation before the court would be adequate to grant judgment in Crown Asset's favor. (Doc. 20-3, Page 3 of 4, ¶ 13).

25.    Mr. Kies was prepared to cross-examine Katrina Carter, but she did not attend the trial. At trial, Mr. Kies presented to the Court the facts and evidence in favor of Crown Asset. Following the trial, the Small Claims Court took the matter under advisement. On September 18, 2020, the Court entered a verdict in favor of Katrina Carter. (Doc. 20-3, Page 3 of 4, ¶ 14, 16). (Doc. 20-12, Page 2 of 2).

### Counsel's Investigation

26.    The following actions and investigations were undertaken by Crown Asset's collection counsel regarding both the JCP Account and Old Navy Account. (Doc. 20-1).

27.     Crown Asset's counsel, before deciding to file suit, contacted Plaintiff's representative to advise the debts had been assigned for collections. Neither Plaintiff nor her representative disputed either debt. (Doc. 20-1, Page 2 of 5, ¶ 5-6; Page 3 of 5, ¶ 24-25).

28.     Upon assignment of a case, Crown Asset's counsel has discretion whether to file suit to collect the debts. (Doc. 20-1, Page 2 of 5, ¶ 7; Page 3 of 5, ¶ 27).

29.     Before filing suit on either account, Crown Asset's counsel verified Plaintiff's name, account number, and the claimed amount were correct. (Doc. 20-1, Page 3 of 5, ¶ 14-16; Page 4 of 5, ¶ 34-36 ).

30.     Before filing suit on either account, Crown Asset's counsel verified Plaintiff was not active in the military, was not incarcerated, was not a minor, and had not filed for bankruptcy. (Doc. 20-1, Page 2 of 5, ¶ 8; Page 3 of 5, ¶ 10-12, 27; Page 4 of 5, 30-32).

31.     Before filing suit, Crown Asset's counsel verified that the venue for the suit was correct and the debt was within the statute of limitations. (Doc. 20-1, Page 3 of 5, ¶ 17; Page 4 of 5, ¶ 37-38 ).

32.      For any case filed, Crown Asset's counsel will try to work with the debtor to resolve the debt without going to trial. If this cannot be done, however, counsel intends to take the case to trial. (Doc. 20-1, Page 4 of 5, ¶ 43).

**Small Claims Court**

33.     In Small Claims Court, certain procedures differ from courts where jurisdiction is based on a higher amount in controversy. AL ST SM CL Rule N.

34.     Of particular importance is Rule J of the Alabama Small Claims Rules. Rule J states in part, "The court in its discretion. . . may relax the rules of evidence and may receive sworn written or recorded statements of witnesses or parties not present at the trial." AL ST SM CL Rule J.

35.     The point of small claims court is to provide for an efficient resolution of disputes of relatively low value by allowing both parties to benefit from the relaxed evidentiary standards. AL ST SM CL Rule A.

## II.     <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 56(c) provides summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the burden of showing there is an absence of evidence to support an essential element of the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (U.S. 1986). Once Crown Asset makes that showing, the burden shifts to Plaintiff to "come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574,

586 (1986) (emphasis in original, quotations and citations omitted).   Confronted with a properly supported motion for summary judgment, Plaintiff must adduce admissible evidence which creates a material factual dispute.  *Clarke v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991).  Plaintiff must do more than "simply show there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  She must produce evidence. *Id.*

Thus, to defeat Crown Asset's Motion for Summary Judgment, Plaintiff must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the non-moving party, which she simply cannot do here. *Dominick v. Dixie Nat'l Life Ins. Co.,* 809 F.2d 1559 (11th Cir. 1989).

### III.   <u>ARGUMENT</u>

**A. Carter's FDCPA claims based upon the collection lawsuit fail because filing a lawsuit is not a deceptive or unfair means of collecting a debt, and Crown Asset filed the lawsuit in good faith.**

**1. The FDCPA did not abolish a debt buyer's judicial remedies, including the good faith filing of a collection lawsuit.**

Summary Judgment is warranted because Plaintiff's theory is not one recognized in the 11th Circuit.  Plaintiff's case arises from two debt collection lawsuits filed by Crown Asset.  Both went to trial with Plaintiff Carter prevailing. She now sues Crown Asset under the Fair Debt Collection Practices Act ("FDCPA"), specifically §1692d, §1692e, and §1692f.  Her claim, no matter which

section of the FDCPA she travels under, requires two contentions to be true.  Neither are. The first contention is Crown Asset filed the suits without the intention to go to trial, instead hoping for a default judgment or settlement.  The second contention is, assuming the first contention to be true, such conduct would violate the FDCPA.

The first contention is wrong.  Crown Asset filed its lawsuits with the full intention to win.  Crown Asset documented its ownership of Carter's debts, substantiated the accounts and the charged-off balances, and retained counsel to collect the accounts and file suit only if an adequate basis existed to do so.  These cases tried in Alabama's small claims court, a system designed to promote economical and expeditious resolutions.  Plaintiff's premise that the suits were filed without the intention to go to trial is simply – and demonstrably - false.

However, Plaintiff's second contention is false even if the first one was not. Pretending Crown Asset lacked the intent to try the cases, the FDCPA does not prohibit filing a collection lawsuit if there is an adequate basis to file it.  If the collector later opts to dismiss the suit short of trial – which did <u>not</u> happen here – such a decision is consistent with the rights of any party to control the expenses, options, and resolution of their claim.  The FDCPA does not prohibit filing a valid suit to collect a debt.  Plaintiff's claims in Count I, whether based on the "false and misleading" language of §1692e, or "harassment and abuse" under §1692d, or

"unfair or unconscionable" behavior per §1692f, fail when a good faith basis existed to file the lawsuit.

"A plaintiff's desire, and any associated legal strategy, to obtain a favorable judgment as inexpensively or expeditiously as possible is not improper, nor is it a FDCPA violation." *Delisi v. Midland Funding, LLC*, No. 14- 2125, 2015 WL 4393901, *7 (E.D. Mo. July 16, 2015). To hold otherwise would run afoul of the FDCPA's "apparent objective of preserving creditors' judicial remedies." *Heintz v. Jenkins*, 514 U.S. 291, 296 (1995) (recognizing an unsuccessful collection action did not violate the FDCPA). Therefore, the relevant inquiry in this case is not whether Crown Asset hoped to obtain an expeditious and inexpensive judgment, but rather whether Crown Asset had a good faith basis to pursue this legitimate means of collection. *Pantoja v. Portfolio Recovery Assocs., LLC*, No. 13 C 7654, 2015 WL 1396609, at *4 (N.D. Ill. Mar. 24, 2015) ("In the final analysis, there is no evidence that Defendant lacked a good-faith basis for pursuing its collection claim in state court, and that is sufficient to dispose of Plaintiff's FDCPA claim here.")

In *Hamilton v. Midland Funding*, the plaintiff-debtor levied several FDCPA claims (and various state law counts) against her creditor, Midland Funding, after prevailing at the trial of Midland's state-court collection suit. 2017 WL 394839 at *1. Similar to the allegations asserted in the instant case, Hamilton alleged Midland "never had any intention of offering any proof at trial[,]" "never intended to offer

one shred of evidence to prove its case[,]" and "offered no testimony from any witness in [its] case." *Id*. at *13. Midland moved for summary judgment, which the Honorable Abdul Kallon, sitting in the United States District Court for the Northern District of Alabama, granted in its entirety. *Id*. at *1. In doing so, Judge Kallon relied in part on an affidavit similar to the one Crown Asset has attached here, in addition to a bill of sale for the account, plaintiff's account statements, and data printouts from the purchased account indicating plaintiff's account number and amount owed. From these documents, the Court found the evidentiary support submitted in connection with Midland's motion for summary judgment "belie[s] [the plaintiff]'s contention that Midland filed a frivolous lawsuit". *Id.* at *3-4.

Similarly, Crown Asset's collection lawsuit was filed in good faith based on the account information and documents in Crown Asset's possession at the time suit was filed. Specifically, Crown Asset possessed account-level documentation linking Carter to the subject debt (i.e., Carter's monthly Synchrony account statements), chain-of-title documentation demonstrating ownership of the account, and bill of sale from Synchrony Bank for the accounts. These materials were more than sufficient to support the filing of the collection suits. *See Pantoja*, 2015 WL 1396609, at *4 (concluding the defendant debt collector did not lack a good-faith basis for filing the collection suit, and thus did not violate the FDCPA, where it produced the debtor's monthly account statements, a supporting affidavit of its employee, and the

underlying bill of sale upon which the affidavit was based).  If a good faith basis existed for the suit at the time it was filed, there is no claim under the FDCPA for taking it to trial, win or lose.

However, the undisputed evidence establishes Crown Asset intended to prosecute its cases. Not only did Crown Asset see the actions through to trial – as opposed to filing a voluntary dismissal – Crown Asset provided evidence to its counsel before either suit was ever filed. Crown Asset provided counsel with forty-one pages of billing records for Carter's JCP account and fifty-one pages of billing records for Carter's Old Navy Account showing Carter's use of the credit cards, the charge-off dates, and amounts. In fact, prior to trial, Crown Asset provided its lawyers with an affidavit of a Crown Asset representative attesting to Crown Asset's acquisition and ownership of Carter's Synchrony accounts. See *White v. Sherman Financial Group, LLC*, 984 F.Supp. 2d 841, 848 (E.D. Tenn. 2013) (granting summary judgment in favor of debt collector where a sworn affidavit and an account document showing a debt amount consistent with the underlying creditors records were presented).

At trial, counsel for Crown Asset, familiar with small claims court and exercising his professional judgment, decided the exhibits attached to the complaint were sufficient to prevail at trial and acted accordingly.  In fact, collection counsel's activities are very important when judging the good faith nature of this suit.  Upon

assignment, counsel provided notice to Carter's representative of her rights to dispute the debt under the FDCPA.  In neither case did she.  Without reason to think the debts were not legitimate (for, in fact, both were legitimate), collection counsel nonetheless verified the account numbers, Ms. Carter's name, and the charge off amounts, excluding post charge-off payments, for both debts.  Before each suit, Counsel made sure Carter was not deceased, in jail, bankrupt, a minor, or active in the military.  Both times, Counsel confirmed venue and that the debt was in statute. This is the opposite of filing a suit with the hopes of a default judgment.  This is a reasoned, measured exercise of discretion by counsel knowledgeable of the procedural and evidentiary rules in the venue.  Crown Asset is entitled to the benefit of this professional judgment especially as 1) collection counsel is authorized to dismiss any case that is not suit worthy and 2) the matter was in small claims court, where the judge can consider hearsay evidence.

In short, Crown Asset had the right to invoke, in good faith, the judicial remedies available to it regarding Carter's debts, and the ultimate outcome— whether settlement, default judgment, victory, or loss—does not matter. "To hold otherwise would mean every time a debt buyer filed suit in good faith, but ultimately failed to win on the merits or faced dismissal on the basis of its complaint, it could be subject to liability under [the FDCPA]." *Richardson v. Midland Funding, LLC*, No. 13-1356, 2013 WL 6719110, *4 (D. Md. Dec. 18, 2013), aff'd, 583 F. App'x

124 (4th Cir. 2014). That is the result Carter seeks here; however, "[t]his cannot be in line with the goals of the FDCPA, which is intended to 'safeguard[] consumers from abusive and deceptive debt collection practices,' . . . not from legitimate collection suits." Id.; see also *Thomas v. Pierce, Hamilton, & Stern*, Inc., 967 F.Supp. 507, 510 (N.D. Ga. 1997) (explaining that "the purpose of the FDCPA is to protect consumers from abusive debt collectors while not overburdening legitimate efforts to collect outstanding debts").

Crown Asset had much more than a good faith belief in the merits of each collection suit. Along with evidence Carter owed both accounts, and along with evidence of its ownership of the accounts, Crown Asset retained counsel knowledgeable of the procedural and evidentiary rules in the venue, who independently reviewed Crown Asset's records to determine if the cases were suit-worthy, and took them to trial in small claims court with evidence the lawyer deemed sufficient to win. The loss at trial does not mean there was no good faith basis to proceed, and the good faith basis to proceed means the debtor-defendant does not have an FDCPA claim if she happens to win at trial. Count I is not recognized in the law and should be dismissed based on the precedent and undisputed facts above.

> **2. Even if a good faith lawsuit could form the basis of a FDCPA claim, the collection lawsuits at issue would not violate any of the specific FDCPA provisions upon which Carter's claims are based.**

### i.  Carter's § 1692d claim fails because the filing of a lawsuit does not constitute abuse or harassment of a debtor.

In Count I, Carter claims Crown Asset violated § 1692d of the FDCPA, which prohibits a debt collector from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C 1692d. However, "the filing of a lawsuit does not have the natural consequence of harassing or oppressing a debtor." *Midland Funding*, quoting *Milijkovic v. Shafrtiz and Dinkin, P.A.*, 791 F.3d 1291, 1305 (11th Cir. 2015). While "a lawsuit might cause a consumer 'embarrassment, inconvenience, and further expense,'" the Eleventh Circuit correctly recognized "[s]uch consequences of a debt collection (or any other) lawsuit are so commonplace that even a consumer susceptible to harassment, oppression, or abuse would not have been harassed, oppressed, or abused by the [notice of a potential lawsuit] *in and of itself*." *Jeter v. Credit Bureau*, 760 F.2d 1168, 1179 (11th Cir. 1985) (italics supplied by court).

Again, in *Hamilton v. Midland Funding* the Judge Kallon considered whether a creditor violated § 1692d of the FDCPA when it filed its collection lawsuit. Without "something more" to consider than the routine filing of a collection suit, "the filing of a lawsuit is not within the scope of prohibited activities that § 1692d contemplates." *Midland Funding*, quoting *Pack v. Unifund CCR Partners, G.P.*, 2008 U.S. Dist. LEXIS 21182, 2008 WL 686800 (M.D. Fla. Mar. 13, 2008). Here, Carter attempts to plead "something more" by alleging the suits were filed without

sufficient evidence to win at trial. As noted in Section I.A. above, this claim is flat-out wrong, but even if it were not, it could never be "something more" since it is perfectly normal for a plaintiff to file suit with the goal of obtaining the most economical and expeditious ending it can.  Even the most sensitive debtors can legally be sued.

As stated above, before the lawsuit was even filed, Crown Asset provided evidence of its ownership of the accounts and an affidavit in support of Motion for Summary judgment to be used at counsel's discretion. Additionally, Crown Asset provided counsel with forty-one pages of billing records for Carter's JPC account and fifty-one pages of billing records for Carter's Old Navy Account showing Carter's obvious use of (and thus responsibility for) the accounts. These documents and the affidavit of Crown Asset disprove the unsupported allegation Crown Asset lacked the intention to win at trial.  It does not matter <u>whether</u> Crown Asset won. What matters is whether Crown Asset <u>could have</u> won and if the answer is yes, there is no FDCPA violation.  If the court had accepted Crown Asset's evidentiary submission with the Complaint, something the Court was entirely authorized to do, Carter would have two judgments against her.  Carter can show nothing "more" than a typical collection suit, something even the most sensitive debtor can handle.  There is no §1692d  violation presented by these facts.

### ii. Carter's claim under § 1692e fails because there was nothing deceptive or misleading in Crown Asset's underlying collection complaints.

In Count I, Carter also asserts Crown Asset violated § 1692e of the FDCPA which provides "[a] debt collector may not use any false, deceptive, or misleading representation or means with the collection of any debt." 15 U.S.C 1692e. Communications are misleading if they "erroneously state the amount of the debt owed . . . [or] incorrectly identify the holder of the alleged debt. *Milijkovic*, 791 F.3d at 130. Under the law, though, Carter's "allegation that [Crown Asset] filed and pursued the [collection] lawsuit without sufficient evidence fails to state a claim that the lawsuit was a false, deceptive, or misleading representation or means to collect a debt pursuant to § 1692e . . . of the FDCPA." *Eades v. Kennedy PC Law Offices*, 799 F.3d 161, 172 (2d Cir. 2015) (holding the plaintiff's allegation that the defendant filed and pursued the collection lawsuit without sufficient evidence fails to state a claim under § 1692e, e(2), e(5), or e(10) of the FDCPA). The present facts offer no good reason to rule differently in the 11th Circuit.

Moreover, Crown Asset's decision to file suit against Carter was not a false and/or misleading means to collect on the debt. Suit was filed by Crown Asset's counsel based on their independent judgment as to the merits of the case. Crown Asset's intent to see it through is evidenced by the documentation provided to its counsel prior to the lawsuit. Indeed, both cases <u>went to trial</u> and in the professional

judgment of Crown Asset's counsel the documentation before the court was adequate to grant judgment in Crown Asset's favor. The fact Crown Asset was unsuccessful does not mean the lawsuit was "false" or Crown Asset had no legal basis to file suit to begin with.  As the Supreme Court stated, "we do not see how the fact that a lawsuit turns out to be unsuccessful could, by itself, make the brining of it an 'action that cannot be legally taken.'" *Heintz v. Jenkins,* 514 U.S. 291, 296, 115 S. Ct. 1489, 131 L. Ed. 2d 395 (1995); see also *Krawczyk v. Centurion Capital Corp.*, 2009 U.S. Dist. LEXIS 12204, 2009 WL 395458, *9 (N.D. Ill. Feb. 18, 2009)("Losing or voluntarily dismissing a collection case does not by itself create an FDCPA claim against the creditor and its attorneys.)  As the *Krawczyk* court held: "Filing a lawsuit is an authorized method of collecting a debt." (2009 U.S. Dist. LEXIS 12204, 2009 WL 395458, *9 (N.D. Ill. Feb. 18, 2009).

### iii. Carter's claims under § 1692f fails because Plaintiff fails to state claim upon which relief can be granted.

The third and final prong of Count I alleges Crown Asset violated § 1692f of the FDCPA which states: "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Just as her claims failed under §1692e and §1692d, the same is true under §1692f because lawful collections that are not false, deceptive, harassing or abusive, certainly do not rise to the level of being "unfair or unconscionable."  Put simply, filing a debt collection suit after the debtor has failed to dispute the debt, after providing proof of the debt

to counsel, and after counsel had deemed the claim suit worthy, is how the system is supposed to work.  It is not unfair to seek a judicial remedy to a dispute.

The Eleventh Circuit Court of Appeals has already rejected Carter's theory under §1692f, and found "[plaintiff] fail[ed] to allege any conduct beyond that which [s]he asserts violates the other provisions of the FDCPA, and in doing so, [plaintiff] fail[ed] to specifically identify how [defendant's] conduct here was either unfair or unconscionable *in addition to* being abusive, deceptive, or misleading. *Milijkovic,* , 791 F.3d at 1308. (emphasis added by court) *See LeBlanc v. Unifund CCR Partner,* 601 F.3d 1185, 1200 & n. 31 (11th Cir. 2010) (finding consumer's §1692f claim dependent in part on consumer's success under § 1692e(5) because "it's doubtful" conduct not found to violate §1692e(5) could be perceived as unfair and unconscionable). As in *Milijkovic*, Plaintiff Carter has not alleged any other conduct which demonstrates an unfair or unconscionable means to collect a debt beyond Crown Asset filing the underlying lawsuits (with the now debunked theory it lacked the intention to win).   This is precisely the same conduct underlying her § 1692d and §1692e claims. Because plaintiff's theory, even if true, could not support a claim under §1692d ("harassing") and §1692e ("false and misleading"), there is no way to meet the conduct was "unfair" or "unconscionable" behavior prohibited under § 1692f.  If the filing of these two collection suits was not harassing, and was not false, the suits cannot be "unfair or unconscionable" either.

## IV.   <u>CONCLUSION</u>

WHEREFORE PREMISES CONSIDERED, Defendant respectfully requests

this Honorable Court enter an order granting summary judgment in its favor and

dismissing this case in its entirety, with prejudice.


Respectfully submitted,

/s/ Neal D. Moore, III
Neal D. Moore, III
*Attorney for Defendant*


**OF COUNSEL:**
**MOORE, YOUNG, FOSTER, & HAZELTON, LLP**
1122 Edenton Street
Birmingham, Alabama 35242
Phone: (205) 879-8722
Fax:   (205) 879-8831
NMoore@my-defense.com

## **CERTIFICATE OF SERVICE**

This is to certify that on this the 5th day of May, 2021, a copy of the above and foregoing has been served upon counsel for all parties to this proceeding via Alafile:

John C. Hubbard
PO Box 953
Birmingham, AL 35201
jch@jchubbardlaw.com

/s/ Neal D. Moore, III
OF COUNSEL